Case call for argument is in re the marriage of Rupa. Also, whenever you're ready to make the seat. Good morning, Your Honor, the mayor's pleased to court. My name is Michelle House. I am counsel for husband in this matter. I was counsel for husband at the trial court level. When we tried this case, husband was a retired IRS agent who is the beneficiary of what they call an OPM annuity, that is Office of Personnel Management annuity, which he had contributed to during the marriage and prior to the marriage. On the date we tried this case, they came to a stipulation, essentially two stipulations. Number one, that the gentleman was in fact in pay status. And number two, that of his benefit for this OPM annuity, 55% was marital. I guess by implication, the other 45% was his non-marital property. That's all we agreed to at the trial court level. This case was tried. It was tried to a judge who produced a judgment, excuse me, a supplemental judgment awarding custody, child support, identifying marital property and dividing it. Your Honor, that judgment came down September 6th of 2007. And on page A22, you will find the division between the parties of the marital interest in husband's OPM annuity. You'll also notice in that division, it doesn't actually divide the asset. It notes the marital interest, provides the date of marriage, determines that the marital interest will be that approved from the date of marriage to the date of retirement, recites that the OPM annuity was in pay status, and includes 55% of the total to be the marital interest. This identification of the asset goes on to determine that $4,501.81 is the per month benefit to husband. This page does not divide that 55% marital interest between the parties. Husband and wife properly each filed a post-trial motion addressing this and some other issues in the judgment. After argument, Your Honor, what we got back was an amended supplemental judgment of October 13th of 2008. The relevant page for that amended supplemental judgment is A35. This amended supplemental judgment, again, identifies the very same asset as the 2007 first judgment. It has the same 55% of total identified as marital, has the same number per month, $4,501.81, but this 2008 judgment actually divides the marital benefit between the two parties. This 2008 judgment gives 50% of the benefit to husband and 50% to the wife. No changes in the language save for the actual division. Neither husband nor wife filed a post-trial motion for this 2008 amended supplemental judgment. No appeal was taken. This judgment is final. Now, Your Honor, the important thing to know about the judgment is that the court liquidated husband's benefit. It is in the 2007 judgment and the 2008 judgment. It is $4,501 each month. The court got that, the trial court got that from Exhibit U, which was husband's trial exhibit, and that's where the court got that number. Your Honor, after the 2008 amended supplemental judgment, which anticipates and directs a qualified domestic relations order or other order to be prepared and submitted, husband submitted a quadro to wife. Wife submitted a quadro to husband. Ultimately, we had a hearing before a different judge, a judge who did not enter either of the judgments. We had that hearing on January 9th. What happened to the first judge? Pardon? What happened to the first judge? Judge Kasin, I believe, her term was up. So a new judge parlayed into that division. There was no change of judge, Your Honor. There was no striking for cause, recusal, nothing. It was just the business of the court. We got a new judge. Did either you or the opposing counsel submit your proposed quadros to the original judge? Judge, it's my recollection that there were proposed quadros between husband and wife, and I believe at that hearing on January 9th, 2009, I believe we each had quadros that we submitted. Of course, the other side… I guess my question is both of you all agreed to allow some other judge that had no idea what was going on to rule on this substantive matter? Judge, that's a very good point. I think we had a choice. Our case was assigned to a new judge. Well, I mean, you didn't bring it up or ask. You said, wait a minute now. You weren't the judge that entered this order. We're asking to fine-tune this order here or whatever. Shouldn't we go back to the judge that actually signed it? Did either of you all address that with the new judge? No, Judge, but your underlying question is that we asked to refine the judgment. No, nobody did. The judgment that produces this qualified domestic relations order is final. There's no change in it. It was more than 30 days after it had been entered. There was no post-trial motion. I'm sorry, Your Honor, you had a question? Judge Kasin got assigned out of domestic relations, and another judge came in. Is that the explanation for the new judge? That's my understanding, Your Honor. I can't sit here and tell you for sure, but that's my understanding. We got a new judge. Nothing anybody did to cause it. When we had this January 9 hearing, we were not allowed on behalf of the husband to present evidence. The judge simply took argument, and you will find the transcript of that argument in your material. After that argument, the court entered a judgment, which is dated January 9. It's handwritten. You'll find it on page 842. This judgment, dated January 9, says that the petition for entry of a quadro is argued, and that the court orders that a quadro shall be entered, awarding to wife $27.5 of respondent's marital OPM annuity immediately over objection of husband. That is not what the amended supplemental judgment said. Completely different. Nowhere in the amended supplemental judgment in dividing this asset did it say that the wife got 27.5 percent. So here on January 9, we have a brand-new judgment. It modifies the amended supplemental judgment. The trial court had no jurisdiction to do that. None. After the January 9, 2009 judgment, a qualified domestic relations order is prepared, and it is submitted by wife pursuant to the January 9 judgment. This qualified domestic relations order is signed by the same judge who heard the argument on January 9, 2009. This qualified domestic relations order does not parrot the order that is the amended supplemental judgment, which says wife gets 50 percent of the marital interest, and here is the number. It does not say that. It quotes the January 2009 order where wife gets 27.5 percent. That is not what the court ordered after a trial of the divorce. It is not. It is a modification of the amended supplemental judgment. The court had no jurisdiction to do that. It is reversible error pursuant to the cases cited in my brief. The other oddity about the qualified domestic relations order is on page 846 where they quote this new language that the court has crafted in January 2009. The language doesn't even quote or reference the January 2009 order. Instead of January 9, when the order was entered, modifying the original judgment, the quadro references an order of January 13, 2009, which I suggest to you has nothing to do with the division of this OPM renewal. This is all very interesting. I represent to you its reversible error, but what the court did in 2009 is by virtue of taking out the $4,500 number, the court has granted wife something the trial court never gave her. The court, by changing the language in its 2009 order and qualified domestic relations order, has given wife a cost of living adjustment provided by the OPM renewal. What's the significance? We're talking about the 2008 order, the amended order, which you think is the one that's applicable. Yes, sir. What's the significance, if any, when you get down to the part that deals with the annuity? What page are you on, Your Honor? I'm on page 11 or your A35 of the two 50 percents. What's the significance of 50 percent for the husband and 50 percent for the wife? The first judgment did not contain 50-50. It didn't divide the OPM asset. I'm looking at the judgment of October 13, 2008. Yes, sir. That's a valid judgment, you think? That is the final valid judgment, Your Honor. Okay. Now, at page 11 of it, I think, which is your A35. Yes, sir. When it talks about marital interest in the husband's U.S. retirement annuity. Do you see that? Yes, sir. And then down below it says, I'm just asking, what's the significance, if any, of the 50 percent to husband of the marital interest and 50 percent to wife of the marital interest? Does that have any significance at all in this case? And the answer to that, Judge, is on page A22, the first version of this division, where it didn't say what husband got, nor did it say what wife got. Are you on page A22, Your Honor? Yes. Do you see the same language, marital interest, et cetera, et cetera? Yes. It doesn't say what husband gets or what wife gets? Page A35 includes the actual division of this OPM asset. It didn't exist before A35. All right. Well, I'm not making myself clear enough. The judgment of October the 13th, 2008, is the valid judgment. Is that correct? Yes, sir. Now, that judgment contains a 50 percent division of the pension, the husband's pension. No, Your Honor, that's the rough two. It is an OPM annuity, and it is a liquidated amount. It's not a pension. Okay, well, the husband's U.S. retirement annuity, that amount there, the quadro, the asset we're talking about here. Yes. Okay. That has 50 percent to the husband, 50 percent to the wife. Yes. Okay. What's the significance of 50 percent to the husband, 50 percent to the wife in this valid judgment here? The significance is, number one, it actually divides the asset we're talking about, and number two, it is 50 percent of the liquidated marital interest, which the court found the gentleman to be in pay status, which we agreed to, and it vetted its benefit to be that number contained on page 835. You and the trial judge had a little difficulty agreeing whether it was 50 percent of or 50 percent or. Well, and I don't understand our disagreement, Your Honor, because the judgment, the final judgment, says a number, like you say, half of $1 or 50 cents. The court liquidated the amount of the gentleman's benefit and then said husband and wife each get 50 percent of it. There was a prior judgment entered that talked about $1,285. That was the amount at that time. So the $4,500 was a calculation of the present value that the court was awarding. Judge, I cannot find that interpretation contained in this final judgment. You will see earlier what the court says during the separation period, husband got the OPM monthly annuity benefit, wife's interest in that was $1,285. It has nothing to do with the division of the asset going forward after the divorce. So I know wife suggests that to you, Your Honor, but the division of marital property is set forth in page 834, 835. The things that the court anticipates and uses to divide the marital property earlier in the judgment have no impart on the court's division of marital property. Grapples and oranges. And, Your Honors, the significance of the court changing the language for the 2009 judgment in the 2009 quadro is that by removing, ignoring this liquidated sum on page 835, the court gave wife a COLA, a cost of living adjustment, which the trial court never anticipated and never gave her. The federal citation, it's CFR Title V, Section 838.622, addresses the rules for this OPM annuity. It says there's two ways to give a non-participant a COLA benefit. Number one is to say she gets a COLA benefit, and number two is to give her a percentage. So by ignoring the liquidated number that the trial court determined, the court passed by operation given wife something the trial court never intended. The court, in this case, gave them both. Gave them a liquidated and an unliquidated. Gave them a 50% and a specific amount on page 835. Is that correct? Judge, I do not agree with that because I have presented this left and right. There is no way to say that this is a calculation with that liquidated number in there. It can't be done. The court liquidated half of a dollar or 50 cents.  Time is up, Counsel. Thank you, Your Honor. Thank you very much. And Counsel will give you a couple extra minutes, too. May it please the Court, Ms. House? My name is Susan Wilson. I represented the wife, Diana Lupa, in this matter, both at the trial level and here at the appeal. And while I agree to some of the factual statements by Ms. House, I believe that the one overwhelming disagreement we have, well, more than one, but the biggest one based on what was just stated is she stated that the court made a finding that $4,500 was the liquidated amount. It's nowhere to be found. There's no finding anywhere that that was the liquidated amount. And I take exception to their brief where it states that the orders, the September of 07 and October of 08 orders were prepared by me. That we both submitted proposed orders to the court, and the court very astutely took those orders, used them, made her own order, and that's what the order to the court is. I, based on their briefs, went back to try to find out where that number came from. And honestly, it wasn't important where the number came from because nowhere ever did the court say that COLAs didn't apply. Was that issue addressed at trial court at all? Which, no. I mean, with the initial, with Judge Hasen, you said? Hasen. Hasen. Was that issue ever brought up by you or your client? That was the point I was going to make next, and I'll make it now. That was the only thing that these two parties agreed to at the trial level. Everything else was contested. From day one, we stipulated each got 50% of the marital interest. Never one time ever, and we don't have the brief from the original trial, unfortunately, but the fact is you're not going to find anything about anything to do with what the amount would be because it never came up. It was agreed to day one. But there was no discussion about any prospective COLAs? Nobody thought about it? Well, according to federal law, she cited, unless the court unequivocally states that COLA doesn't apply, it does apply. They never said that. But even more importantly, when she was stating today that the court made the finding that $4,100, $4,500 was somehow the liquidated amount, she said the court relied on Exhibit U. I found Exhibit U. I found an affidavit filed by Mr. Lupa in 06. I found an affidavit signed and sworn and notarized by Mr. Lupa in 07. I found Exhibit U. I found an affidavit, a financial affidavit signed and filed and notarized by Mr. Lupa in 09. Not one of them comports to this number. And, in fact, if you look at Exhibit U, which she specifically says the court relied on, 55% of Exhibit U is $3,627.35. It's not $4,500. The court never made that finding. They never liquidated it. And if, indeed, the court was relying on Exhibit U, there would have been a different number there. The bottom line is it never came up because it was never an issue. And when they purported their quadro or quadro to the court, they included COLAs in theirs. And we agree. They get a COLA, we get a COLA, everybody gets a COLA. Never one time was a COLA excluded. The federal law says unless you unequivocally exclude it, it has to be part of the order. In our brief, we cite all of the places where they talk about the percentage. As you pointed out in the October order, when the court had not technically divided it, even though that was the stipulated agreement, when they came back and they asked the court, we need to have a specific percentage, the court, if it had intended to exclude COLAs, would have put in column A a dollar amount, and they would have put in column B a dollar amount. The court put 50%, and in capital letters said 50% of the marital interest to the husband. In capital letters, 50% of marital interest to the wife. And while counsel, as was pointed out also, counsel had a disagreement with the court when it came to the wording of the order. Her memorandum of law actually said 55% of the total of $4,501. As you can see, the order doesn't say that. The order says or. If we're talking unequivocable, you don't have either or. You have a dollar amount. The court had many opportunities. If that had been the intention, to give us a dollar amount, it could have said of perhaps. It could have made a finding of what the dollar amount should have been. It could have put a dollar amount in these columns. It did none of those. This is very simple. It would have been simpler if somebody would have mentioned the word cola. Well, and frankly, they put cola in theirs. I mean, it was intended from day one. They put a cola in their fulgro, just like we put one in ours and couldn't understand why we put one in ours and they put one in theirs and tried to say because the court at one point has a dollar amount, which frankly doesn't comport to anything in the record anywhere, that that is their unequivocal proof of what should have happened. That's not what the court intended. On its face, it's very clear that's not what the court intended. The law that they used says that's not what the court intended. Was your client not getting $4,501.81 a month at that time? My client didn't get her share of the OPM until sometime in the end of 2009. Right. I realize, but going back, did she get that amount? No. In a rearage or anything? No. So you're saying you don't know where the trial judge came up with $4,501.81? Well, I do know where the trial judge came up with it because that's the amount they said was his pay status at the time, and the court, as you know, used what had been due to him for child support, offset that what was due to her from the OPM, and frankly the number that is here is too high. I mean it would be our benefit to use this number at least for the next few years, but the fact is that's not the number. That's not what the court ordered. That's not what the parties stipulated to. The only time the court used a number in the trial court and was pointed out the $1,285.00 was what Mr. Lupa said was half of his net, which in post-divorce issues turned out that was correct, but that's what the trial court used based on the testimony of Mr. Lupa, not on a document produced by him or anything else, and frankly it wasn't that important because we were just trying to offset some things to get us to the time of the judgment. But there was never a need to put a dollar amount or make a finding because it was a percentage of whatever it was whenever the order got in. Based on that, Your Honors, I ask the court to uphold what the trial court did and find that the orders throughout consisted that my client was entitled to a COLA. Let me ask just one last question. You go right above that on page 835, the felon's appendix, and it's got the wife's pensions and says by domestic relations order, same thing. It just says 50-50, but there's a specific amount down for his. Why would there be a specific amount for his and not a specific amount for your client's pension? She hasn't retired yet. Her retirement will be based on some number 15 years into the future, so we couldn't offset that because he wasn't entitled to it. The only thing that could be offset were the things that they were entitled to while he was pending, and that's, I think, where the number came from when they asked him what's the amount. But it's not substantiated. That number is not substantiated anywhere in any of the documents filed by Mr. Lupa or in the subpoena. I'm not sure where it came from, but it certainly wasn't intended to make a finding or make a liquidation. Any other questions? I don't believe so. Thank you, Counsel. Thank you. Counsel? Thank you, Alex. Briefly, Ms. Wilson says if COLA is not ordered, COLA applies. That's simply not true with respect to this particular annuity, and I cite the CFR for you in my brief. Husband filed affidavits. Husband submitted Exhibit U, which were his pay stubs for this asset. So any representations that were drawn, any conclusions made by the trial court are reduced to the trial court's judgment. This would all be very persuasive, very interesting if this were an appeal of the 2008 judgment. It's not. Right, wrong, different, if it came from space, it doesn't matter. The quadro and the post-judgment motion cannot change the language of the quadro. This quadro properly needs to take the language set forth in the 2008 judgment and stick it in the quadro. That is the only thing that the court has jurisdiction to do. Thank you. Thank you, Counsel. We will take this case under advisement. We appreciate the briefs and arguments of Counsel.